UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES | ) | CRIMINAL NO. 3:18-CR-00079 (KAD) |
|---|---|---|
| v. | ) | |
| ERIC CHAMBERS | ) | MARCH 4, 2019 |

**MEMORANDUM OF DECISION RE:**
**THE DEFENDANT'S MOTION FOR DISCLOSURE OF THE GOVERNMENT'S**
**LEGAL INSTRUCTIONS TO THE GRAND JURY [ECF NO. 103]**

Kari A. Dooley, United States District Judge

Pending before this Court is defendant Eric Chambers's (the "Defendant" or "Chambers") motion for disclosure of the Government's legal instructions to the grand jury. This case arises out of a string of robberies allegedly committed by Chambers and his co-defendant, Jachim Brown, in Bridgeport and Stratford, Connecticut in 2017. In the second superseding indictment, Chambers is charged with aiding and abetting Brown in the commission of six Hobbs Act robberies[1] or attempted Hobbs Act robberies. The Defendant seeks disclosure of the grand jury instructions on the ground that the Government might not have properly instructed the grand jury concerning the specific intent element of aiding and abetting. If he is correct, he argues, he could seek a dismissal of the indictment. The Defendant has failed to demonstrate a particularized need for the Government's legal instructions to the grand jury and, therefore, his motion for disclosure is DENIED.

**Procedural Background**

On April 19, 2018, the grand jury returned an indictment, charging Chambers with aiding and abetting Brown in the commission of five Hobbs Act robberies and attempted Hobbs Act

---
[1] Codified at 18 U.S.C. § 1951(a).

robberies. On September 20, 2018, the grand jury returned a superseding indictment, which added charges against Chambers and Brown related to two more Hobbs Act robberies.

On January 4, 2019, the parties selected a jury. On January 11, 2019, the Defendant moved to dismiss the superseding indictment. The gravamen of the Defendant's motion to dismiss was that the superseding indictment failed to charge all of the essential elements of Hobbs Act robbery, and aiding and abetting, because it did not explicitly allege that Brown and Chambers acted knowingly and willfully.

The Court convened a hearing on the motion to dismiss on January 16, 2019. At the outset of the hearing, the Court (*Underhill, J.*)[2] noted that one of the selected jurors had already been excused due to a conflict and that a second juror would be excused for cause. Turning to the motion to dismiss, the Court expressed concern as to whether the superseding indictment adequately apprised the grand jury that Chambers was charged only as an aider and abettor. The Government represented that the grand jury was instructed on the knowing element of aiding and abetting and that it presented its theory of the case against Chambers, which involved an aiding and abetting theory of liability, to the grand jury. Finally, the Government argued that the indictment comported with Second Circuit precedent. The Court acknowledged that the Government might be correct but stated that it would be prudent for the Government to seek another superseding indictment, to make it clear that Chambers was being charged as an aider and abettor and that he acted knowingly. The Court also identified other practical reasons to proceed in this fashion. The Government agreed to seek a superseding indictment, recognizing that there is "no harm in clearing up this issue before trial." The Defendant similarly agreed to this approach. Thereafter, the first jury was released.

---

[2] This matter was transferred to the undersigned on February 11, 2019.

On January 24, 2019, a grand jury returned a second superseding indictment, charging Chambers with aiding and abetting Brown in the commission of six Hobbs Act robberies or attempted Hobbs Act robberies. Unlike the prior indictments, the second superseding indictment alleged that Brown and Chambers "did, and knowingly aided and abetted each other to, unlawfully and knowingly take and obtain the property" of the relevant commercial establishments. On February 8, 2019, the Defendant filed the instant motion for disclosure of the Government's legal instructions to the grand jury, raising the issue of whether the Government adequately instructed the grand jury on the specific intent element of aiding and abetting.

**Legal Standard**

It has long been recognized that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979); *see also* Fed. R. Crim. P. 6(e)(2). Disclosure of grand jury proceedings is permitted in certain limited circumstance, however, including upon a showing that a "ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). Because "a presumption of regularity attaches to grand jury proceedings"; *United States v. Leung,* 40 F.3d 577, 581 (2d Cir. 1994); "a defendant seeking the disclosure of grand jury materials bears a heavy burden"; *United States v. Schlegel*, 687 Fed. Appx. 26, 30 (2d Cir. 2017) (summary order), *cert. denied sub nom. Hatfield v. United States*, 138 S. Ct. 182 (2017). He must demonstrate that he has a "particularized need" for the grand jury materials at issue. *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 400 (1959); *United States v. Moten,* 582 F.2d 654, 662 (2d Cir. 1978); *United States v. Smith*, 105 F. Supp. 3d 255, 259 (W.D.N.Y. 2015). "A party makes a showing of particularized need by proving 'that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is

3

greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *In re Grand Jury Subpoena,* 103 F.3d 234, 239 (2d Cir.1996) (quoting *Douglas Oil Co. of Cal.,* 441 U.S. at 222).

Although the Second Circuit Court of Appeals has not squarely addressed the issue, "courts within the Second Circuit Court of Appeals have consistently held that obtaining grand jury instructions requires a showing of particularized need." *Smith*, 105 F. Supp. 3d at 259 (collecting cases); *see also United States v. Faltine*, No. 13-cr-00315 (KAM), 2014 WL 4370811, at *5 (E.D.N.Y. Sept. 2, 2014) ("a 'defendant is not routinely entitled to grand jury . . . instructions in order to engage in a fishing expedition in hopes of uncovering an impropriety or defect in the proceeding where he has no basis to conclude that an impropriety or defect exists.'") (quoting *United States v. Abounnajah,* No. 91-cr-00146, 1991 WL 42895, at *2 (E.D.N.Y. Mar. 26, 1991)). The Defendant contends that "these cases are wrong" and urges this Court to follow precedent from courts in the Ninth Circuit Court of Appeals,[3] which has adopted a relaxed disclosure rule for ministerial grand jury materials, including grand jury instructions. *United States v. Alter*, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973) ("The proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not."); *United States v. Belton*, No. 14-cr-00030 (JST), 2015 WL 1815273, at *3 (N.D. Cal. Apr. 21, 2015) ("The legal instructions given to the grand jury regarding the charges on which they are deliberating are a part of the 'ground rules' by which the grand jury conducts its proceedings.") (collecting cases); *cf. In*

---

[3] The Defendant also relies on *dictum* in *United States v. Facteau*, No. 1:15-cr-10076 (ADB), 2016 WL 4445741 (D. Mass. Aug. 22, 2016) to support his argument that the particularized need standard does not apply to grand jury legal instructions. In that case, the defendant filed a motion to compel disclosure of the government's instructions to the grand jury, but the magistrate judge concluded that the defendant had failed to establish a particularized need for the instructions. *Id.* at *3–*4. Upon review, the district court agreed that the motion to compel was properly denied under prevailing case law. *Id.* at *5. In reaching that conclusion, however, the district court expressed its personal opinion that legal instructions given to the grand jury need not be kept secret. *Id.* The Court disagrees with this statement.

4

*re Grand Jury Subpoena,* 103 F.3d at 239 ("The law of this circuit is clear that, once a proceeding falls under Rule 6(e), it receives a presumption of secrecy and closure.").

The Court is not persuaded that such a relaxed approach adequately protects the long-recognized goals of grand jury secrecy. *See In re Grand Jury Subpoena,* 103 F.3d at 237. Indeed, "[legal] instructions [given to the Grand Jury] . . . , or the existence of such instructions goes to the substance of the charge being laid before the Grand Jury as well as how the Grand Jury is to proceed regarding the type and manner of produced evidence before the panel." *United States v. Larson*, No. 07-cr-00304-S (HBS), 2012 WL 4112026, at *5 (W.D.N.Y. Sept. 18, 2012). Accordingly, affording these instructions the same level of secrecy as other grand jury materials is, in this Court's view, appropriate.

**Discussion**

The Defendant contends that a particularized need exists for disclosure of the grand jury instructions because there is reason to believe that the grand jury was not properly instructed concerning the element of specific intent. If that is true, the Defendant contends, he might be entitled to a dismissal of the second superseding indictment.

The Defendant offers four reasons to question the accuracy of the Government's legal instructions to the grand jury: (1) the Government's first two indictments failed to allege that Chambers acted "knowingly"; (2) the second superseding indictment does not allege that Chambers acted with the specific intent that the robberies succeed; (3) the Government's purportedly inaccurate proposed jury instructions on the charge of aiding and abetting in another proceeding; and (4) Government misconduct during prior grand jury proceedings in this case.

The Defendant's first two arguments are premised on the claim that the indictments in this case are facially defective, giving rise therefore, to an inference that the grand jury was incorrectly instructed. On this issue, the Defendant is incorrect.

"To comport with the Fifth and Sixth Amendments, a criminal indictment must (1) contain all of the elements of the offense so as to fairly inform the defendant of the charges against him, and (2) enable the defendant to plead double jeopardy in defense of future prosecutions for the same offense."[4] *United States v. Santeramo*, 45 F.3d 622, 624 (2d Cir. 1995) (per curiam). Our courts have repeatedly recognized that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly . . . set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)). Accordingly, an indictment that closely tracks the language of the statute and adequately puts the defendant on notice of the charges against him is not defective simply because it does not expressly set forth implicit elements of an offense, such as knowledge or specific intent. *E.g., Santeramo*, 45 F.3d at 624 (holding that indictment that closely tracked language of 18 U.S.C. § 924(c) was valid even though it did not explicitly allege knowledge requirement because it put the defendant on adequate notice of the charges against him); *United States v. Jackson*, 513 Fed. Appx. 51, 55 (2d Cir. 2013) (summary order) ("Although the indictment did not specifically contain the words 'knowingly' or 'willfully,' the plain and common-sense reading of the indictment put the defendant on notice of what the charges against him were, such that he was not prejudiced in the preparation of his defense.");

---

[4] In his motion to dismiss, the Defendant also argued that failure to include implicit elements in an indictment necessarily violates his Fifth Amendment right to indictment by grand jury. In support of that argument, he relied upon the Second Circuit's decision in *United States v. Roshko*, 969 F.2d 1 (2d Cir. 1992). *Roshko* is inapposite, however, because it addressed whether the government violated the defendant's right to indictment by grand jury when it constructively amended its indictment at trial to include a new object of the conspiracy, not whether the indictment as-drafted was constitutionally deficient. *Id.* at 5.

*United States v. Tobias*, 33 Fed. Appx. 547, 549 (2d Cir. 2002) (summary order) (same); *see also United States v. Tykarsky*, 446 F.3d 458, 474 n.10 (3d Cir. 2006) ("[W]e also conclude that the failure to explicitly recite the element of specific intent is not fatal to the indictment. It states all of the essential elements of the crime by necessary implication and meets all of the requirements of Rule 7(c)(1) of the Federal Rules of Criminal Procedure.").

Here, the second superseding indictment fairly informs the Defendant of the charges against him and is not otherwise deficient so as to raise any inference that the grand jury instructions were incorrect. *See Smith*, 105 F. Supp. 3d at 261 ("The absence of detailed allegations regarding Defendant's alleged knowledge of the conspiracy is insufficient to create a particularized need [for the government's legal instructions to the grand jury].").

The Defendant next argues that the Government's previously submitted proposed jury instructions in *United States v. Lee*, No. 17-cr-00065 (SRU) reveal that the Government misapprehends the requirements of proving an aiding and abetting theory of liability. The Defendant relies on excerpted portions of the proposed instruction to support the inference he asks this Court to draw. A review of the aiding and abetting charge in its entirety defeats this argument because it fairly and accurately sets forth the law regarding aiding and abetting.[5]

The Defendant next relies upon purported previous Government misconduct during grand jury proceedings in this case. Specifically, the Defendant points to testimony elicited from a task force officer that one of the complaining witnesses refused to testify before the grand jury out of safety concerns for a family member and argues that this conduct constituted prosecutorial misconduct. If the Government committed misconduct in one aspect of the presentation, he argues,

---

[5] The Court recognizes that the parties disagree regarding the Court's jury instructions to this case. This disagreement, which the Court will resolve in due course, does not create a basis to review the grand jury instructions. Were that the case, grand jury instructions would be disclosable whenever a disagreement as to the content of a jury charge arises.

there is reason to question the correctness of the Government's legal instructions. The authority the Defendant relies on to support his threshold allegation of prosecutorial misconduct, however, does not support his argument or conclusion.

In *United States v. DiGregorio*, 605 F.2d 1184, 1189 (1st Cir. 1979), the prosecutor confronted a grand jury witness with a prior inconsistent statement. When the witness asked to speak to his attorney, the prosecutor "engaged in a lengthy harangue about the identity and motives of [witness's] attorney, eventually eliciting testimony tending to show that the attorney had been hired by [the defendants] to keep [the witness] quiet." *Id*. The prosecutor then "admonished [the witness], again at length, that protecting the targets of the investigation through perjury would not pay off and that [the witness] should not be afraid of DiGregorio." *Id.* On appeal, the First Circuit concluded that "the prosecutor overstepped ethical bounds and came close to tainting the indictment by intimidating the witness and insinuating that the targets of the investigation would harm the witness." *Id.* In addition, although the First Circuit censured the prosecutor's conduct, it affirmed the trial court's denial of the motion to dismiss because there was sufficient evidence to return the indictment and the defendants were not prejudiced by this misconduct. *Id*. The conduct complained of here bears no resemblance to the circumstances in *DiGregorio.*

In *United States v. Riccobene*, 320 F. Supp. 196, 200 (E.D. Pa. 1970), *aff'd* 451 F.2d 568 (3d Cir. 1971) (per curiam),[6] the prosecutor offered his personal opinion that the target of the investigation into securities-related offenses was "personally involved in organized crime and could personally harm the witness" as an explanation for why that witness was not testifying in person. The district court acknowledged that "the grand jury was certainly entitled to know why

---

[6] In his brief, the Defendant cited *United States v. Martino*, 825 F.2d 754, 759 (3d Cir. 1987), which in turn cited and relied on *Riccobene* for the statement of law relied on by the Defendant. Therefore, the Court examines *Riccobene* when considering the Defendant's arguments. Notably, the facts in *Riccobene* are more closely aligned with this matter than those in *Martino*.

8

the government was presenting hearsay testimony through a Secret Service agent in lieu of the direct testimony of the witness actually involved in the transactions," but nonetheless concluded that the statement was "unnecessary" and "without evidentiary substantiation."[7] *Id*. Unlike in *Riccobene*, there is no claim here that either the prosecutor or the testifying witness expressed any personal opinion as to why the complaining witness did not testify or as to the validity of the witness's stated safety concerns. *Riccobene* therefore does not support the Defendant's claim of prosecutorial misconduct either.

Finally, by way of supplemental authority, the Defendant relies on additional grand jury transcripts, which he opines contain additional prosecutorial misconduct. The Court has reviewed this additional material and disagrees with the Defendant. A grand jury being asked to return a superseding indictment is always going to know that a previous indictment was returned. It is not improper for a prosecutor to answer a grand juror's insistent procedural questions regarding the history of the case and prior grand jury activity. Quite properly, the grand jury was told specifically and repeatedly not to consider the fact of any prior indictment in the case. Finally, the prosecutor's statement that the Government "added language" does not suggest, by inference or otherwise, that the jury instructions were incorrect. In the first place, the Defendant's argument is premised upon an erroneous statement that Judge Underhill found that the prior grand jury had not been properly charged. The Defendant advanced this argument, but Judge Underhill did not make any such finding. Second, that language may have been added to the indictment, which was true, sheds no light on the instructions given to the grand jury. One has nothing to do with the other.

---

[7] It is unclear whether the district court's concern was about the reference to organized crime, safety concerns, or both. The Third Circuit, however, stated that it was the prosecutor's "comment connecting appellant with organized crime" that was "improper." *United States v. Riccobene*, 451 F.2d 586 (3d Cir. 1971) (per curiam).

9

In sum, the Defendant has not provided an adequate basis for questioning the propriety or accuracy of the Government's legal instructions to the grand jury. Nor has he demonstrated a particularized need for the grand jury instructions. As noted, there is a strong presumption of regularity in grand jury proceedings, and conclusory and speculative allegations of misconduct are insufficient to overcome that presumption. *United States v. Parlato*, No. 15-cr-00149 (FPG) (JJM), 2017 WL 9487081, at *2 (W.D.N.Y. Feb. 13, 2017), *report and recommendation adopted*, No. 15-cr-00149 (FPG), 2017 WL 2952832 (W.D.N.Y. July 10, 2017); *United States v. Morgan*, 845 F. Supp. 934, 941 (D. Conn. 1994), *aff'd* 51 F.3d 1105 (2d Cir. 1995).

As an alternative to ordering the Government to produce these materials, the Defendant ask this Court to review them *in camera*. Although the Second Circuit has not squarely addressed this issue, several courts in this Circuit have applied the particularized need requirement to requests for *in camera* review of grand jury materials. *E.g., United States v. Nix*, No. 15-cr-06126 (EAW), 2016 WL 11268961, at *2 (W.D.N.Y. Nov. 7, 2016); *Smith*, 105 F. Supp. 3d at 260; *United States v. King*, No. 10-cr-00122 (JGK), 2011 WL 1630676, at *5 (S.D.N.Y. Apr. 27, 2011). Whether or not the particularized need standard applies, the Court sees no need, particularized or otherwise, for the Court to examine the Government's grand jury instructions.

For all the foregoing reasons, the Defendant's Motion for Disclosure of the Government's Legal Instructions to the Grand Jury [103] is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of March 2019.

                                      /s/ Kari A. Dooley
                                    KARI A. DOOLEY
                                    UNITED STATES DISTRICT JUDGE